UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMMAR JABER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:14-CV-201 |
| § | |
| METROPOLITAN TRANSIT AUTHORITY § | |
| OF HARRIS COUNTY, TEXAS, § | |
| § | |
| Defendant. § | |

## **OPINION AND ORDER**

Pending before the Court is Defendant Metropolitan Transit Authority of Harris County, Texas's ("Metro") Motion to Dismiss (Doc. 4) Plaintiff Ammar Jaber's ("Jaber") claims of race, national origin, and religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*. Having considered the motion, the response, the reply, the record, and applicable law, the Court concludes the motion should be granted.

**I.     Background**

Metro hired Jaber in 2008 as a project manager in the Facilities Maintenance Department. Pl.'s First Am. Compl., Doc. 6 ¶ 5. In January 2011, Jaber was promoted to a supervisor position in the Performance Improvement Department, where he worked under Vice President Denise Wendler ("Wendler"). *Id*. According to Jaber's complaint, Wendler lacked ethical standards in management and made false progress reports to the Metro board in order to obtain funding for her department. *Id*. ¶¶ 6–7. After expressing his concerns about Wendler to the Metro Compliance Department, and even to Wendler herself, Wendler began decreasing Jaber's evaluation scores and began scheduling mandatory meetings during his Friday afternoon Islamic prayer services. *Id*. ¶¶ 7–8. In November 2012, Wendler gave Jaber a substandard score on his

six-month evaluation. *Id*. ¶ 9. Jaber complained to Metro that Wendler was discriminating against him and requested an investigation. *Id*. In December 2012, Jaber applied and interviewed for a supervisor position in a different department and again requested that Metro investigate Wendler. *Id*. Before he learned whether or not he was accepted for the position, Wendler terminated Jaber's employment. *Id*.

On September 24, 2013, Jaber filed a Charge of Discrimination with the Texas Workforce Commission (TWC) and Equal Employment Opportunity Commission (EEOC). EEOC Charge, Doc. 4, Ex. A. In stating the particulars of his charge, Jaber wrote, "On or about December 10, 2012, I was wrongfully terminated after I unjustly received a Performance Improvement Plan on or about June 14, 2012. I believe I was terminated in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id*. On September 30, 2013, the EEOC closed its file on Jaber's Charge stating, "The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC." Notice of Rights, Doc. 4, Ex. B. The Notice informed Jaber that he had a right to file a lawsuit based on his charge within 90 days.

Jaber filed his original petition in the 129th Judicial District of Harris County, Texas on January 7, 2014 alleging discrimination and retaliation in violation of Title VII. Pl.'s Original Pet., Doc. 1-4. Metro subsequently removed and filed the instant motion to dismiss. Def.'s Notice of Removal, Doc. 1. Metro contends that Jaber's claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to exhaust his administrative remedies under Title VII. Doc. 4 at 8–9; Def.'s Reply in Support of Mot. to Dismiss, Doc. 8 at 3–6.

## II.  Legal Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must include "a short

and plain statement of the claim showing that the pleader is entitled to relief." *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010) (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks omitted). Where exhaustion of administrative remedies is a prerequisite to filing suit, failure to plead satisfaction of this prerequisite forms a proper basis for a Rule 12(b)(6) dismissal. *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 478 n.8 (5th Cir. 1997). For claims of employment discrimination, a plaintiff satisfies this requirement by filing an administrative charge with the EEOC. *Id.* at 788 n.6. The charge then enables the administrative agency to investigate the plaintiff's claims and, if appropriate, negotiate a resolution. *Id.* It is well-established that "that 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)). Courts are instructed, however, to read a plaintiff's administrative charge "broadly, in a fact-specific inquiry into what EEOC investigations can reasonably be expected to trigger." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.), *cert denied*, 549 U.S. 888 (2006). In *Pacheco v. Mineta*, the Fifth Circuit explained:

> One the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance…[A]llowing a federal complaint to proceed despite its loose "fit" with the administrative charge and investigation is precluded if it would circumvent agency efforts to secure voluntary compliance before a civil action is instituted.
>
> *Id.* (citing *Sanchez*, 431 F.2d at 463). Failure to exhaust administrative remedies "is not a

procedural 'gotcha' issue," but "a mainstay of proper enforcement of Title VII remedies."

*McClain v. Lufkin Industries, Inc.,* 519 F.3d 364, 272 (5th Cir. 2008), *cert. denied,* 129 S. Ct. 198 (2008).

"In deciding whether an EEOC charge has raised a particular claim, courts examine the charge by looking 'slightly beyond its four corners, to its substance rather than its label.' A plaintiff is not required to 'check a certain box or recite a specific incantation to exhaust administrative remedies." *Martinez v. Tex. Workforce Comm'n-Civil Rights Div.*, No. A-11-CA-837 LY, 2013 WL 5354579, at *3 (W.D. Tex. Sept. 24, 2013) (citing *Pacheco*, 448 F.3d at 788–89, 792). However, "[b]ecause factual statements are such a major element of a charge of discrimination, [courts] will not construe the charge to include facts that were initially omitted." *Harris v. Honda*, 213 F. App'x 258, 261 (5th Cir. 2006) (citing *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)).

**III. Discussion**

Metro argues that Jaber's claims should be dismissed because he "did not provide the required notice to Defendant through his EEOC charge of discrimination [and, therefore,] failed to activate the investigation, voluntary compliance and conciliations functions of the EEOC." Doc. 8 ¶ 2. Specifically, Metro contends that Jaber's EEOC charge "does not provide any notice into race discrimination, national origin discrimination, religious discrimination or retaliation" and that it is "unreasonable for these discrimination and retaliation claims to grow out of an employment termination from a Performance Improvement Plan." Doc. 8 ¶ 9. In addition, Metro argues that Jaber's retaliation claim should be dismissed because he has failed to show that he was engaged in a protected activity under Title VII. *Id.* ¶ 10.

Jaber responds to Metro's arguments by claiming his allegations could reasonably have been expected to grow out of his EEOC charge, in part because he met with an EEOC

investigator and personally informed her of the factual basis for his allegations. Doc. 7 ¶ 8. Jaber also contends that if his case is dismissed, the EEOC may allow him to amend his charge, which would enable him to refile his suit and result in wasted "time, money, and judicial resources." *Id.* In support of his argument, Jaber relies on his own affidavit and that of his attorney. Aff. of Haroon Rafati, Doc. 7, Ex. A ¶ 2; Aff. of Ammar Jaber, Doc. 7, Ex. B ¶ 3. Metro objects to the proffered affidavits as 1) improper evidence for the Court's consideration in ruling on a 12(b)(6) motion; and 2) based upon hearsay. Doc. 8 ¶ 12.

In ruling on a motion to dismiss under Rule 12(b)(6), a court's analysis is generally constrained to the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims. *See Lone Star Fund (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins*, 224 F.3d at 498-99; *Cinel v Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). Here, the only evidence that is appropriate for the Court to consider in ruling on Metro's 12(b)(6) motion is 1) Jaber's First Amended Complaint, 2) Jaber's EEOC Charge, and 3) Jaber's notice-of-rights letter. Jaber's affidavit and that of his counsel are well beyond the scope of what may properly be considered and will be disregarded as such.

Construing Jaber's EEOC Charge as broadly as possible, the Court concludes that it is devoid of any implication that race, national origin, or religious discrimination might have played a role in his termination. Furthermore, on his EEOC Charge form, Jaber checked only the "retaliation" box as the basis for his alleged discrimination, despite being given additional options to check boxes for discrimination based on race, national origin and religion. *See* Doc. 4, Ex. A. In addition, the factual statements in Jaber's charge fail to support even his claim for retaliation. A prima facie case of retaliation consists of three elements: (1) engaging in a

protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Ikossi-Anatasiou v. Bd. Of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009). In his charge, Jaber bases his retaliation claim on his receipt of a "Performance Improvement Plan on or about June 14, 2014." *See* Doc. 4, Ex. A. Nowhere does Jaber allege that he was engaged in an activity protected under Title VII.

It is not reasonable to presume that an EEOC investigation into any discrimination or retaliation on the part of Metro could have grown out of Jaber's EEOC Charge. Indeed, it is apparent from Jaber's charge that he never pursued administrative remedies for his claims, let alone exhausted them. This failure serves as a bar to pursuing those claims in federal court, *Books A Million*, 296 F.3d at 378, and, because the last alleged unlawful employment action was his termination on December 10, 2012, it is now too late to remedy that defect. *See* 42 U.S.C. § 2000e-5(e)(1) (A charge of discrimination under Title VII must be filed with the EEOC within 180 days after the unlawful conduct occurred unless the aggrieved person has initiated proceedings with a State or local agency authorized to grant relief from such practice (in Texas, the Texas Workforce Commission, Civil Rights Division), in which case he need only file his complaint with the EEOC within 300 days after the practice occurred or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier.). Although failure to exhaust administrative remedies warrants dismissal without prejudice in some cases, *Taylor*, 127 F.3d at 478, in this case, re-pleading claims for age or gender discrimination would be futile. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (defining futility "to mean that the amended complaint would [still] fail to state a claim upon which relief could be granted"). Accordingly, dismissal with prejudice is appropriate.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Metropolitan Transit Authority of Harris County, Texas's Motion to Dismiss (Doc. 4) is **GRANTED** and Plaintiff Ammar Jaber's case is **DISMISSED**.

SIGNED at Houston, Texas, this 14th day of August, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE